JAMES BLEWITT, Appellant, *against* STEPHEN H. OLIN,
Respondent.

(Decided January 3d, 1888.)

Defendant, as trustee of an estate consisting of extensive apartment
houses, employed De K., husband of the beneficiary, as agent to take
charge of the same.  Plaintiff furnished labor and materials for such
houses on De K.'s order without defendant's knowledge.  The income
received from the houses was, by defendant's order, after De K.'s dis-
charge, and after notice that plaintiff looked to defendant for payment,
applied to the payment of interest on a mortgage on the buildings,
under a prior promise to the mortgagee to make such application.
*Held,* that defendant was bound by De K.'s acts, and personally liable
for debts contracted by him in the line of his authority, though he had
no funds in his hands to pay the same; and the delay by plaintiff in
not presenting his claim until after De K.'s discharge was no defense.

APPEAL from a judgment of the City Court of New York
entered upon the report of a referee.

The action was brought against defendant as trustee for
Mina De Kay, a married woman, under a deed of trust
executed February 15th, 1884, to recover for goods sold and
materials furnished for work done on certain houses known
as the Rutland Flats, belonging to the trust estate.   Other
facts are stated in the opinion.

*Isaac N. Miller*, for appellant.

*G. L. Rives*, for respondent.

VAN HOESEN, J. — The amendment to the complaint that
was made at the trial did not change the cause of action
from a claim for goods sold and materials furnished into an
equitable action for the enforcement of a trust, of which
the defendant was trustee, and the plaintiff a *cestui que
trust*.   If such had been the effect of the amendment, it
would have been fatal to the action, for the City Court has

Blewitt *v.* Olin.

no jurisdiction of suits in equity. The intention of the pleader seems to have been to plead the facts that, in his opinion, made the defendant liable to pay the plaintiff's claim. Not content with alleging that the defendant was the owner of the Rutland Flats, he detailed the circumstances under which that ownership was acquired, and the duties that it imposed, among which was the payment for work done and materials furnished in preserving and maintaining the flats; but I fail to find anything to support the theory that the plaintiff brought his action as a *cestui que trust* of the defendant.

The action is for goods sold and materials furnished. The defendant, from February, 1884, to May 1st, 1885, had the legal title to the " Rutland Flats." He was the trustee of Mrs. De Kay, and he agreed to receive the rents, to apply them to the expenses of the trust, and to such other expenses as might be necessary and proper for the maintenance and preservation of the property, and to pay certain claims that were specified in the deed of trust. As the collection of the rents and the management of the buildings required more labor and more time than the defendant could afford to bestow upon duties of that description, he employed Mr. De Kay as his agent. In January, 1885, the defendant became dissatisfied with De Kay, and discharged him, appointing in his place Mr. Bliss, who acted as the defendant's agent till the trust was terminated by the sale of the property under foreclosure.

While De Kay was in the defendant's employment, he engaged the plaintiff to do certain work that the referee found to be "proper and necessary for the maintenance and preservation of the flats." For a part of the work the plaintiff was paid by De Kay, but at the time De Kay was discharged, a balance remained unpaid, for which this action was brought.

The referee has found that the defendant would be liable to the plaintiff were it not for the existence of the following facts, which he thus collocates : I quote : " The work was done between August 1st, 1884, and January 23d, 1885 ;

Blewitt v. Olin.

that is, after Blewitt had discovered that Olin was trustee for the property; but he does not seem to have understood that Olin as such was liable as De Kay's principal. He clearly did the work relying upon De Kay for his pay. During that six months De Kay, as Olin's agent, was permitted by Olin to pay out of rents collected about $6,600 for interest on the mortgages. The state of the accounts between Olin and De Kay was thus changed during the period in question, to Olin's prejudice, through Blewitt's laches, and it would now be unjust to hold Olin liable for Blewitt's bill."

" The defendant claims," said the referee, " that if he had known that the plaintiff claimed to hold him personally, he would not have allowed the money collected from rents to be paid out on claims for which he was not personally liable."

I presume that the referee is to be understood as saying that the counsel for the defendant had argued that it was improbable that the defendant would have paid claims for which he was not personally liable, while there were claims for which he was personally liable that remained unpaid. The force of that argument is very much weakened by facts in the case that are undisputed. The evidence shows beyond all question that the defendant, after the removal of De Kay from the position of agent, paid, by the hands of Bliss, the new agent, about $8,000 on claims for which he was not personally liable, and that he knew, when this large amount was paid, that the plaintiff looked to him personally for the payment of the demand for which this action was brought. The evidence also conclusively shows that the defendant considered that his honor was pledged to the payment of the interest on the mortgage, and that he removed De Kay because the latter diverted to other uses money that he felt bound in honor to pay to the holder of the first mortgage. If the referee had found as a fact that the defendant had been induced to pay interest on the mortgage by his belief that there was no claim made against him personally for work done in preserving the trust estate,

I cannot see what evidence there would have been to support the finding; but he has not so found : he regards what he speaks of as the defendant's " claim," not as a fact, but as an argument.   On the 28th of January, 1885, the defendant wrote to De Kay that "a Mr. Peterson has called upon me saying that you sent him to ask for the payment of a claim.   All obligations which I contract will be met, but you must see that it is impossible for me to assume or pay any old claims, especially as I have not been furnished with any account."   This letter, written after De Kay's removal, was a refusal to pay any bill for work that had been done on the trust estate while De Kay was the defendant's agent. It appears by the testimony of Bliss, which is not disputed, that between January 27th, 1885, and May 1st, 1885, about $12,000 was collected by him as rents of the trust property, and that of that sum about $4,000 was "expended for running expenses incurred while he (Bliss) was agent, and that about $8,000 was paid as interest on the mortgage." It appears by the referee's findings that "defendant paid by Bliss, his agent, claims of the same preferred class (under the deed of trust) as plaintiff's, that accrued and were presented to him subsequently to plaintiff's bill."

It was assumed by the defendant, as well as by the referee, that the liability of the defendant for claims that were incurred by him while De Kay was his agent terminated when De Kay was discharged.   It would have been more plausible to say that the defendant's liability ceased when he had no longer funds of the trust estate in his hands, but then it is clear that that conjuncture did not arise till some months after De Kay's removal.   Out of the $12,000 that came into the defendant's possession between the time of De Kay's dismissal and the first of May thereafter, and $8,000 of which the defendant paid as interest on the mortgage (for which he was not personally liable), he could easily have paid (if he had chosen to pay) the plaintiff's claim.   Knowing that the plaintiff looked to him for the payment of his claim, the defendant nevertheless paid out $8,000 as interest on the mortgage.   How can it be said, in face of this fact, that the de-

fendant would not have paid the interest if he had known of the plaintiff's demand? The foundation of the defense fails. The liability of a trustee for work necessary for the preservation of the trust property done by direction of the trustee or his duly authorized agent, is not disputed. That liability is a personal liability (*New* v. *Nicoll*, 73 N. Y. 127). It was the defendant's duty to know what work was done upon the trust property, and what use was made of the trust moneys that were received. It would be most inequitable to deprive the plaintiff of his hire for the reason that the defendant transferred to other hands the duties that the law devolved upon him, and left the disbursement of the trust fund to the discretion of an agent. It is indisputable that the agent did no more than what the defendant was bound by his duty as trustee to do; the agent gave directions to the plaintiff and to other mechanics to do such work as was necessary and proper for the maintenance and preservation of the property; he paid interest upon the mortgage: these things the defendant had undertaken to do. If the defendant did not know that the property needed preservation, whose fault was that? If he did not know that mechanics were at work, by the command of his general agent, whose fault was that?

If a trustee confides the management of the trust property to a general agent, and that agent, doing only what the trust deed authorizes, after collecting rents, pays one creditor instead of another, does he do an act that the law will adjudge to be to the damage and prejudice of the trustee? Does it lie in the power of the trustee to relieve himself from liability to those who have been rightfully employed by his general agent by saying, when called upon to pay their just demands, " I will not pay you, because my agent has paid to A, B, and C money that I might have paid to you if I had had a list of all who have demands against the trust estate."

The liability of the defendant does not at all depend upon his having trust funds in his hands. If, in person or by an agent, he orders work to be done upon the trust property,

he is personally liable, whether he has trust money in hand or not. It is no answer to a debt that he has incurred, and for which he is by law personally liable, that he has paid out all the trust funds that he has received. The cases to which the referee refers have no applicability to the point involved in this litigation. Those cases hold that though an undisclosed principal is ordinarily liable, when discovered, for goods that have been bought for him by an agent, yet he may be discharged if the seller, after ascertaining that he is liable, postpones his demand for payment so long as to lead the principal to believe that the seller has elected to hold the agent as his debtor, and if, acting under that belief, the principal then settles with the agent for the goods. In this case, there was no change in the debtor and creditor relations of the defendant and De Kay in consequence of any act of omission or of commission on the part of the plaintiff. The supposed grievance of the defendant is that he paid a sum of money that the deed of trust made it his duty to pay; for the payment of interest is expressly provided for by that instrument. The law cannot adjudge that a trustee is prejudiced by doing an act that the trust deed requires him to perform. But, as I have already said, if the payment of interest on the mortgage were injurious to the defendant, the plaintiff is not responsible for that injury, because it is indisputable that the interest was paid simply for the reason that the defendant considered himself bound in honor to pay it.

There seems to be no answer to the plaintiff's action, and, therefore, the judgment should be reversed and a new trial ordered, with costs to abide the event.

LARREMORE, Ch. J., and BOOKSTAVER, J., concurred.

Judgment reversed and new trial ordered, with costs to abide event.